Susan Qin, Esq. (SBN:350720)
Law Office of Susan Qin, PC
17870 Castleton St. Suite 100
City of Industry, CA 91748
Tel: (626) 486-9222
Email: susan@susanqinlaw.com

*Attorney for Petitioner*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

REN WANG, A# 140-129-321

Petitioner,

v.

ERNESTO SANTACRUZ, Field Office Director, Enforcement and Removal Operations, Los Angeles Field Office, U.S. Immigration and Customs Enforcement; DAVID VENTURELLA, Acting Director, U.S. Immigration and Customs Enforcement; MARKWAYNE MULLIN, Secretary, U.S. Department of Homeland Security; TODD BLANCHE, Attorney General of the United States; and ACTING WARDEN OF THE ADELANTO ICE PROCESSING CENTER,

*Respondents.*

Case No.

**PETITION FOR WRIT OF HABEAS CORPUS UNDER 28 U.S.C. § 2241**

## INTRODUCTION

1. Petitioner Ren Wang, A# 140-129-321 ("Petitioner"), is a native and citizen of China who is presently detained by Immigration and Customs Enforcement ("ICE") at the Adelanto ICE Processing Center pursuant to 8 U.S.C. § 1226(a) after ICE arrested him on July 26, 2026 and initiated removal proceedings by serving him with a Notice to Appear alleging removability under INA § 237(a)(1)(B) .
2. Although Petitioner is detained under a discretionary detention statute, he has never been convicted of any crime, has no history of violence, no gang affiliation, and no record suggesting that he poses a danger to the public. DHS's own records confirm that Petitioner has no criminal history.
3. Petitioner was lawfully admitted to the United States in H-4 nonimmigrant status through his former spouse's H-1B classification. Following the dissolution of that marriage, Petitioner made repeated efforts to maintain lawful immigration status through filings submitted to United States Citizenship and Immigration Services ("USCIS"), including applications to extend and change status. DHS records acknowledge that USCIS ultimately approved Petitioner's change of status to B-2 visitor classification through March 4, 2022.
4. On July 26, 2026, ICE arrested Petitioner at Los Angeles International Airport pursuant to a targeted enforcement operation. At the time of his arrest, Petitioner was preparing to board a domestic commercial flight from Los Angeles, California, to Newark, New Jersey. He was traveling openly under his true identity through ordinary Transportation Security Administration screening procedures and was not attempting to depart the United States.

5. Following his arrest, DHS charged Petitioner as removable pursuant to INA § 237(a)(1)(B) and detained him under § 1226(a). Petitioner thereafter sought custody redetermination before the Immigration Court.

6. On August 11, 2026, Petitioner appeared before the Adelanto Immigration Court for a custody redetermination hearing under the standards articulated in *Matter of Guerra*, 24 I&N Dec. 37 (BIA 2006). Following consideration of the evidence presented, the Immigration Judge denied Petitioner's request for a change in custody status and ordered that Petitioner remain detained. Petitioner remains detained at the Adelanto ICE Processing Center pursuant to that custody determination and continues to challenge the legality and constitutionality of his continued detention through this habeas proceeding.

7. The detention order was the product of a legally deficient proceeding that departed from the limited purpose of a custody redetermination hearing. Rather than focusing on whether Petitioner posed a danger to the community or presented a genuine risk of absconding, DHS repeatedly diverted the proceeding toward issues reserved for removal proceedings, including the timing of Petitioner's asylum claim, speculation regarding the ultimate merits of future relief applications, criticism of prior immigration filings, and challenges to Petitioner's business activities and financial circumstances.

8. DHS further relied upon allegations unsupported by the governing custody framework and advanced legal theories that effectively treated Petitioner's efforts to maintain lawful status as evidence against release. The government's own records show that Petitioner repeatedly pursued immigration relief through USCIS, including applications to extend and modify his nonimmigrant status. Yet DHS urged the Court to treat those efforts as evidence of flight risk rather than evidence of compliance with the immigration system.

9. Compounding these deficiencies, DHS relied on a Form I-213 that contains numerous material inaccuracies and repeatedly conflates Form I-539 applications with Form I-589 asylum applications. The government's primary evidentiary submission therefore calls into question the reliability of significant portions of the factual narrative presented during the custody proceeding.

10. The Constitution does not permit civil detention based upon speculation, legally irrelevant considerations, or an erroneous understanding of the governing custody standard. Nor does the Due Process Clause permit the government to transform a bond hearing into a premature adjudication of removability, eligibility for asylum, or the likelihood of success on future claims for relief.

11. Petitioner's continued detention is particularly troubling because DHS never established that he poses any danger whatsoever to the community. Instead, the denial of bond rested almost entirely on an exaggerated and unsupported assessment of flight risk despite Petitioner's longstanding residence in the United States, extensive personal and financial ties, lack of criminal history, ongoing participation in immigration processes, and demonstrated willingness to appear openly in public and engage with government agencies.

12. Although 8 U.S.C. § 1226(e) limits judicial review of discretionary custody determinations, it does not preclude review of constitutional claims or questions of law. *Martinez v. Clark*, 124 F.4th 775, 781-82 (9th Cir. 2024); *Singh v. Holder*, 638 F.3d 1196, 1202 (9th Cir. 2011). Petitioner does not ask this Court to reweigh evidence or substitute its judgment for that of the Immigration Judge. Rather, Petitioner challenges

the legality of the custody determination itself and the constitutional sufficiency of the process that resulted in his continued detention.

13. The deprivation of physical liberty "*lies at the heart of the liberty that the Due Process Clause protects*." Every additional day of confinement subjects Petitioner to ongoing and irreparable constitutional injury.

14. Further bond proceedings would not provide an adequate or effective remedy. Petitioner has already received a custody hearing, yet the hearing was conducted under a fundamentally flawed legal framework that relied upon improper considerations unrelated to danger or flight risk. Remanding the matter for additional bond litigation would prolong the very injury that gives rise to this petition and would leave Petitioner detained while Respondents attempt to justify a detention decision that is already constitutionally infirm.

15. Because Petitioner's continued detention violates the Due Process Clause of the Fifth Amendment and because no adequate alternative remedy exists, Petitioner respectfully requests that this Court issue a writ of habeas corpus and order his immediate release from immigration custody pending the conclusion of his removal proceedings.

**JURISDICTION**

16. Petitioner is in the physical custody of Respondents and is presently detained at the Adelanto ICE Processing Center in Adelanto, California.

17. This Court has jurisdiction under 28 U.S.C. § 2241 because Petitioner is in custody under the authority of the United States and challenges the legality of that custody under the Constitution and laws of the United States.

18. Although 8 U.S.C. § 1226(e) limits review of discretionary custody determinations, it does not preclude judicial review of constitutional claims or questions of law. See *Martinez v. Clark*, 124 F.4th 775, 781-82 (9th Cir. 2024); *Singh v. Holder*, 638 F.3d 1196, 1202 (9th Cir. 2011).

19. This Court also has jurisdiction under 28 U.S.C. § 1331 because this action arises under the Constitution and laws of the United States, including the Immigration and Nationality Act and the Due Process Clause of the Fifth Amendment.

20. This Court may grant relief pursuant to 28 U.S.C. § 2241, the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202, the All Writs Act, 28 U.S.C. § 1651, and its inherent equitable authority to remedy unconstitutional restraints on liberty.

21. Petitioner challenges the legality and constitutionality of his continued immigration detention and seeks habeas relief in the form of immediate release from custody.

**VENUE**

22. Venue is proper in this Court pursuant to 28 U.S.C. § 2241 because Petitioner is detained within the Central District of California and his immediate custodian is located within this District.

23. Venue is proper pursuant to *Rumsfeld v. Padilla*, 542 U.S. 426, 442-43 (2004), and *Braden v. 30th Judicial Circuit Court of Kentucky*, 410 U.S. 484, 494-95 (1973), because Petitioner is presently confined within this judicial district and seeks relief from the federal officials exercising custody over him.

24. Venue is also proper pursuant to 28 U.S.C. § 1391(e) because Respondents are officers and employees of the United States acting in their official capacities, and a substantial

part of the events or omissions giving rise to the claims asserted herein occurred within the Central District of California.

## REQUIREMENTS OF 28 U.S.C. § 2243

25. Pursuant to 28 U.S.C. § 2243, this Court must either grant the writ of habeas corpus or issue an order directing Respondents to show cause why the writ should not be granted unless it appears from the application that Petitioner is not entitled to relief.

26. Section 2243 further provides that if an order to show cause is issued, Respondents must file a return "*within three days unless for good cause additional time, not exceeding twenty days, is allowed.*" 28 U.S.C. § 2243.

27. Habeas corpus is "*perhaps the most important writ known to the constitutional law . . . affording as it does a swift and imperative remedy in all cases of illegal restraint or confinement.*" *Fay v. Noia*, 372 U.S. 391, 400 (1963).

28. The Ninth Circuit has likewise emphasized the urgent nature of habeas proceedings, observing that "[t]*he application for the writ usurps the attention and displaces the calendar of the judge or justice who entertains it and receives prompt action from him within the four corners of the application.*" *Yong v. I.N.S.*, 208 F.3d 1116, 1120 (9th Cir. 2000) (citation omitted).

29. Expedited consideration is warranted because Petitioner remains subject to ongoing physical confinement that he alleges is unlawful and unconstitutional. Each additional day of detention results in a continuing deprivation of liberty and inflicts irreparable harm. Prompt consideration is particularly appropriate where, as here, Petitioner remains in ongoing removal proceedings, continues to pursue relief authorized by Congress,

challenges Respondents' authority to continue detaining him, and seeks immediate release from custody through the Great Writ of Habeas Corpus.

**PARTIES**

30. Petitioner Ren Wang, A# 140-129-321, is a native and citizen of China. He is currently detained at the Adelanto ICE Processing Center in Adelanto, California. Petitioner remains in removal proceedings before the Immigration Court and has no final order of removal.

31. Respondent Ernesto Santacruz is the Field Office Director for Enforcement and Removal Operations ("ERO"), Los Angeles Field Office, U.S. Immigration and Customs Enforcement ("ICE"). In that capacity, he exercises legal authority over Petitioner's detention and is responsible for implementing and overseeing detention decisions affecting Petitioner. He is sued in his official capacity.

32. Respondent David Venturella is the Acting Director of U.S. Immigration and Customs Enforcement. As Acting Director, he oversees ICE's detention and removal operations nationwide and is responsible for the policies and practices under which Petitioner is detained. He is sued in his official capacity.

33. Respondent Markwayne Mullin is the Secretary of the Department of Homeland Security ("DHS"). As Secretary, he is responsible for the administration and enforcement of the Immigration and Nationality Act and exercises supervisory authority over ICE and other DHS components involved in Petitioner's detention. He is sued in his official capacity.

34. Respondent Todd Blanche is the Attorney General of the United States. As Attorney General, he oversees the Executive Office for Immigration Review ("EOIR"), including

the Immigration Courts responsible for adjudicating Petitioner's removal proceedings. He is sued in his official capacity.

35. Respondent Acting Warden of the Adelanto ICE Processing Center is Petitioner's immediate physical custodian and is responsible for Petitioner's day-to-day confinement. The Acting Warden has custody over Petitioner and is sued in his official capacity.

## LEGAL FRAMEWORK

36. This Court has jurisdiction pursuant to 28 U.S.C. § 2241 because Petitioner challenges the legality of his present physical detention.

37. Federal district courts possess habeas corpus jurisdiction to review the lawfulness of immigration detention and to remedy violations of the Constitution and laws of the United States.

38. Although Congress has limited judicial review of certain immigration decisions, federal courts retain jurisdiction to review constitutional claims and questions of law arising from immigration detention. 8 U.S.C. § 1226(e) does not insulate unlawful detention from judicial scrutiny merely because a custody determination has been labeled discretionary. See *Martinez v. Clark*, 124 F.4th 775, 781-82 (9th Cir. 2024); *Singh v. Holder*, 638 F.3d 1196, 1202 (9th Cir. 2011).

39. Federal courts exercising habeas jurisdiction may determine whether detention is authorized by statute, whether the Government has applied the correct legal standard, and whether continued detention complies with the requirements of the Due Process Clause.

40. Petitioner does not seek review of the Immigration Judge's discretionary weighing of the proper evidence. Rather, Petitioner challenges the legality of the detention decision itself,

including the legal framework employed during the custody proceeding and the constitutional adequacy of the process that resulted in his continued confinement.

41. The Due Process Clause applies to all persons physically present within the United States, including noncitizens. As the Supreme Court has explained, "*once an alien enters the country, the legal circumstance changes, for the Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent.*" *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001).

42. Freedom from physical restraint lies at the core of the liberty protected by the Due Process Clause. The Supreme Court has recognized that "[f]*reedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that* [the Due Process] *Clause protects.*" *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001).

43. Immigration detention is civil rather than criminal in nature. Because immigration detention is not punishment, it may be justified only insofar as it reasonably advances a legitimate governmental objective.

44. The Government's authority to detain noncitizens is therefore subject to constitutional limitations. Continued detention must bear a reasonable relationship to the purposes asserted to justify that detention and may not become excessive, arbitrary, or punitive in effect.

45. Under 8 U.S.C. § 1226(a), the legitimate purposes of detention are ensuring a noncitizen's appearance at future proceedings and protecting the community from danger. Custody

determinations must therefore be based upon an individualized assessment directed toward those objectives.

46. Due process requires that a custody determination be grounded in relevant and reliable evidence. A detention decision that rests upon legally irrelevant considerations, speculation, factual inaccuracies, or matters unrelated to danger and flight risk fails to satisfy constitutional requirements.

47. A custody proceeding becomes constitutionally deficient when it is transformed into an adjudication of issues reserved for removal proceedings, including the ultimate merits of relief applications, removability determinations, or speculation regarding whether a noncitizen will ultimately prevail on a future claim for relief.

48. Petitioner's interest in remaining free from physical confinement is among the most fundamental liberty interests protected by the Constitution. The deprivation of that liberty requires meaningful procedural safeguards and a custody determination that is rationally connected to the permissible purposes of immigration detention.

49. The writ of habeas corpus exists to provide a prompt judicial remedy against unlawful executive detention. Federal courts possess broad authority under 28 U.S.C. §§ 2241 and 2243 to remedy unconstitutional restraints on liberty.

50. Where continued detention violates the Constitution, federal courts may order release from custody as an appropriate form of habeas relief. See *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973); *Zadvydas v. Davis*, 533 U.S. 678, 687-88, 699-701 (2001).

51. Petitioner has already received the custody proceeding that Respondents contend is due. This case therefore does not present a claim that additional process is required. Rather,

Petitioner alleges that the process already provided was constitutionally deficient and resulted in unlawful detention.

52. Further bond proceedings would not provide an adequate or effective remedy. Petitioner remains subject to an ongoing deprivation of liberty flowing from a custody determination that was reached through legal error and consideration of impermissible factors unrelated to the legitimate purposes of civil immigration detention.

53. Accordingly, habeas corpus provides an appropriate and necessary vehicle for judicial review of Petitioner's continued detention and for the immediate release requested in this Petition.

## FACTUAL BACKGROUND

### A. PETITIONER'S LAWFUL ADMISSION AND IMMIGRATION HISTORY

54. Petitioner Ren Wang, A# 140-129-321, is a native and citizen of China.

55. Petitioner met his former spouse, Mufei Niu ("Ms. Niu"), while attending church services in the United States. Both Petitioner and his former spouse practiced Christianity. Petitioner and Ms. Niu married on January 21, 2016. Their son, Aiden Wang, was born on June 6, 2018.

56. In September 2016, Petitioner traveled to China to obtain an H-4 visa based upon his spouse's H-1B status. After obtaining the visa, Petitioner returned to the United States and was lawfully admitted on November 19, 2016 in H-4 nonimmigrant status. DHS records reflect that Petitioner's H-4 status was derived from his spouse's H-1B classification.

57. For several years thereafter, Petitioner remained in the United States pursuant to lawful immigration status.

58. As reflected in DHS records, Petitioner repeatedly sought to maintain lawful immigration status through applications filed with United States Citizenship and Immigration Services ("USCIS"). DHS records reflect multiple Form I-539 filings and further reflect that USCIS approved Petitioner's change of status from H-4 to B-2 visitor classification.

59. DHS records indicate that USCIS approved Petitioner's B-2 status through March 4, 2022.

60. Petitioner's marriage subsequently ended in divorce. Following the dissolution of that marriage, Petitioner could no longer rely upon his former spouse's immigration status and, therefore, continued pursuing available immigration options through USCIS in an effort to remain compliant with United States immigration law.

61. Petitioner's immigration history reflects repeated engagement with the immigration system and repeated efforts to maintain lawful status through procedures specifically provided under federal immigration law.

**B. PETITIONER'S PURSUIT OF PROTECTION CLAIMS**

62. Petitioner fears returning to China and intends to pursue asylum, withholding of removal, and related protection claims in his removal proceedings.

63. Petitioner's fear of return arises from prior encounters with Chinese authorities related to his Christian faith and religious activities, as well as subsequent events involving his former spouse that reinforced his concerns regarding conditions in China.

64. During much of his residence in the United States, Petitioner maintained lawful immigration status through nonimmigrant classifications and applications pending before USCIS and pursued other lawful immigration avenues available to him.

65. As a result, Petitioner did not initially seek asylum protection after arriving in the United States.

66. On or about August 6, 2026, counsel attempted to file Form I-589, Application for Asylum and for Withholding of Removal, on Petitioner's behalf. Because Petitioner was detained, counsel was unable to obtain Petitioner's signature before filing and submitted a declaration explaining the circumstances and confirming Petitioner's authorization to submit the application pending receipt of his signature.

67. The Immigration Court rejected the filing because the application did not contain Petitioner's signature.

68. Counsel intends to resubmit the application bearing Petitioner's signature as soon as the signature can be obtained.

**C. ARREST BY ICE AND INITIATION OF REMOVAL PROCEEDINGS**

69. On July 26, 2026, Immigration and Customs Enforcement ("ICE") arrested Petitioner at Los Angeles International Airport ("LAX").

70. According to DHS records, Petitioner was scheduled to board a domestic United Airlines flight from Los Angeles, California, to Newark, New Jersey.

71. Petitioner was not attempting to depart the United States.

72. Petitioner was traveling on a domestic itinerary through normal Transportation Security Administration screening procedures and under his true identity.

73. Following his arrest, DHS served Petitioner with a Notice to Appear charging removability pursuant to INA § 237(a)(1)(B) based upon an alleged nonimmigrant overstay.

74. DHS thereafter placed Petitioner into removal proceedings and detained him pursuant to 8 U.S.C. § 1226(a).

**D. PETITIONER'S LACK OF CRIMINAL HISTORY AND DANGER TO THE COMMUNITY**

75. Petitioner has no criminal history.

76. DHS records expressly identify no criminal record.

77. DHS records further indicate that Petitioner has no gang affiliation.

78. DHS presented no evidence that Petitioner poses a danger to persons, property, or the community.

79. Throughout the custody proceedings, DHS focused almost exclusively upon allegations concerning flight risk rather than dangerousness.

**E. DEFICIENCIES IN DHS'S EVIDENCE**

80. DHS relied heavily upon Form I-213 during the custody proceedings.

81. Form I-213 contains multiple inaccuracies.

82. Most notably, the document repeatedly identifies Petitioner's filings as Form I-539 applications while simultaneously stating that "***Form I-589***" applications were approved or denied on various dates.

83. Form I-539 and Form I-589 are entirely separate immigration forms serving fundamentally different purposes.

84. The repeated confusion of those forms raises questions concerning the accuracy and reliability of portions of DHS's factual presentation.

**F. THE AUGUST 11, 2026 BOND HEARING**

85. On August 11, 2026, Petitioner appeared before the Adelanto Immigration Court for a custody redetermination hearing pursuant to 8 C.F.R. § 1236.

86. Petitioner presented evidence that he had no criminal history, had never engaged in violent conduct, posed no threat to public safety, and was not dangerous.

87. DHS did not present evidence establishing that Petitioner posed a danger to the community.

88. Instead, DHS repeatedly focused upon Petitioner's immigration history and the fact that he had not previously filed an asylum application.

89. DHS questioned the viability of Petitioner's anticipated asylum claim and challenged the likelihood that Petitioner would ultimately obtain relief in removal proceedings attempting to adjudicate the merits of his asylum claim.

90. DHS further questioned Petitioner's business activities and finances.

91. Much of DHS's presentation focused upon issues properly reserved for removal proceedings, rather than the limited custody questions of dangerousness and flight risk.

92. During the hearing, the Immigration Judge questioned aspects of DHS's position and inquired whether DHS was casting doubt upon its own charging allegations.

93. Notwithstanding those concerns, the Immigration Judge ultimately denied bond.

94. In a written Order dated August 11, 2026, the Immigration Judge concluded that Petitioner "*failed to meet his burden to establish that he is not such a significant risk of flight that no amount of bond or alternatives to detention would be sufficient to mitigate it.*"

95. Petitioner remains detained as a result of that flawed custody determination.

**CLAIMS FOR RELIEF**

**COUNT I**

**VIOLATION OF THE FIFTH AMENDMENT DUE PROCESS CLAUSE (UNLAWFUL CONTINUED DETENTION)**

96. Petitioner re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

97. The Fifth Amendment prohibits the federal government from depriving any person of liberty without due process of law.

98. Physical liberty is among the most fundamental interests protected by the Constitution.

99. Immigration detention under 8 U.S.C. § 1226(a) is civil rather than criminal in nature and may be justified only insofar as it reasonably advances legitimate governmental interests, including ensuring a noncitizen's appearance at future proceedings and protecting the public from danger.

100. Petitioner has no criminal history, no gang affiliation, and no history of violence. DHS presented no evidence establishing that Petitioner poses a danger to any person or to the community.

101. Petitioner's continued detention is based solely upon a procedurally flawed finding that he purportedly presents such a significant flight risk that no amount of bond or alternatives to detention could reasonably mitigate that risk.

102. The record does not establish a constitutionally sufficient basis for that conclusion.

103. Petitioner's immigration history reflects repeated efforts to maintain lawful status through lawful administrative procedures, including applications filed with USCIS and a USCIS-approved change of status from H-4 to B-2 classification.

104. Petitioner was arrested while preparing to board a domestic commercial flight from Los Angeles to Newark, New Jersey under his true identity through ordinary TSA procedures and was not attempting to leave the United States.

105. Petitioner's continued detention therefore lacks a sufficient constitutional justification and results in an ongoing deprivation of liberty in violation of the Due Process Clause of the Fifth Amendment.

106. As a direct result of Respondents' actions, Petitioner remains unlawfully deprived of his liberty.

**COUNT II**

**CUSTODY DETERMINATION VIOLATED DUE PROCESS AND CONSTITUTED AN ABUSE OF DISCRETION**

107. Petitioner re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

108. A custody determination under 8 U.S.C. § 1226(a) must be based upon an individualized assessment directed toward the permissible purposes of civil immigration detention, namely danger to the community and risk of flight.

109. In evaluating whether detention is necessary, immigration courts traditionally consider factors bearing on danger to the community and risk of flight, including criminal history, family ties, employment history, community ties, and record of appearing for proceedings. *Matter of Guerra*, 24 I&N Dec. 37 (BIA 2006). Petitioner has no criminal history, possesses substantial family, business, and community ties within the United States, owns and operates businesses employing numerous individuals, is the beneficiary of an approved Form I-140 immigrant petition, and remains actively engaged in pursuing

relief from removal. These factors strongly demonstrate that Petitioner is neither a danger to the community nor a flight risk.

110. During the August 11, 2026 custody redetermination hearing, DHS repeatedly focused upon matters unrelated to those issues.

111. DHS relied upon Petitioner's failure to previously file an asylum application, questioned the likelihood of success of anticipated protection claims, challenged the viability of future immigration relief, criticized Petitioner's prior immigration filings, and questioned Petitioner's business activities and finances.

112. Those issues are properly reserved for adjudication in removal proceedings and do not bear directly upon whether Petitioner presents a danger to the community or an unmitigable risk of flight.

113. DHS further relied upon Petitioner's domestic travel within the United States as purported evidence of flight risk despite the absence of any allegation that Petitioner was attempting to flee the country or evade immigration authorities.

114. DHS also relied upon Form I-213 despite material facial inaccuracies within the document, including repeated references conflating Form I-539 applications with Form I-589 applications.

115. By relying upon legally irrelevant considerations, speculative assumptions regarding unadjudicated forms of relief, and unreliable factual assertions, the custody proceeding departed from the limited purpose of a bond hearing.

116. The resulting custody determination was arbitrary, irrational, and fundamentally unfair.

117. The continued detention flowing from that constitutionally deficient custody determination violates Petitioner's rights under the Due Process Clause of the Fifth Amendment.

## COUNT III

## FURTHER BOND PROCEEDINGS ARE NOT AN ADEQUATE REMEDY PRAYER FOR RELIEF

118. Petitioner re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

119. Petitioner has already received the custody proceeding that Respondents contend is due.

120. The constitutional injury alleged in this Petition is not the absence of a bond hearing but the constitutional deficiency of the hearing that was provided.

121. The August 11, 2026 custody determination was reached through consideration of improper factors, speculation concerning relief that has not yet been adjudicated, and issues unrelated to the permissible purposes of civil immigration detention.

122. Remanding the matter for additional bond proceedings would not adequately remedy the ongoing deprivation of Petitioner's liberty.

123. Each additional day of detention constitutes a continuing constitutional injury.

124. Under these circumstances, further bond proceedings would not provide a meaningful or effective remedy.

125. Immediate release is the only relief capable of redressing the ongoing violation of Petitioner's constitutional rights.

## PRAYER FOR RELIEF

WHEREFORE, Petitioner respectfully requests that this Court grant the following relief:

a. Assume jurisdiction over this matter;

b. Issue a writ of habeas corpus declaring Petitioner's continued detention unlawful and unconstitutional;

c. Order Respondents to immediately release Petitioner from immigration custody;

d. Grant such other and further relief as the Court deems just and proper.

DATED: August 17, 2026

Respectfully submitted

Susan Qin Esq.
*Attorney for Petitioner*

**VERIFICATION BY SOMEONE ACTING ON THE PETITIONER'S BEHALF PURSUANT TO 28 U.S.C. § 2242**

I am submitting this verification on behalf of Petitioner because I am Petitioner's attorney. I have discussed with Petitioner the events described in this Petition. Based on those discussions, I hereby verify that the statements made in the attached Petition for Writ of Habeas Corpus are true and correct to the best of my knowledge.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Dated: August 17, 2026

Susan Qin Esq.
*Attorney for Petitioner*